UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICKY SOUCY, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cv-00024-JDL |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION AFTER REVIEW
OF COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A**

Plaintiff, an inmate incarcerated at the Maine State Prison, alleges Defendants[1] violated the Americans with Disabilities Act, the Rehabilitation Act, and his Eighth and Fourteenth Amendment rights. (Complaint, ECF Nos. 1 & 1-1.) In accordance with the in forma pauperis statute, a preliminary review of Plaintiff's complaint is appropriate. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint is also subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

---

[1] In the caption of his complaint, Plaintiff names as the defendants, the "MDOC et Al.", suggesting additional defendants, and the Maine State Prison. (ECF No. 1.) In the body of his complaint Plaintiff makes allegations regarding the actions of specific corrections officers—Sergeant Thomas Averill, Sergeant Mallard, Officer "Touchette" or "Tucett," and Officer Brandon Soper. (*See* ECF No. 1-1.) Viewing Plaintiff's complaint most favorably to him, I construe the complaint to identify the four corrections officers as the "et al." referenced in the caption.

Following a review of the complaint, I recommend the Court dismiss Plaintiff's claims against certain of the defendants.

**STANDARD OF REVIEW**

When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff is currently incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The relevant question ...

in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible.'" *Rodríguez–Reyes v. Molina–Rodríguez,* 711 F.3d 49, 55 (1st Cir. 2013) (quoting *Twombly,* 550 U.S. at 569 n. 14).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal standard applied to the pleadings of pro se plaintiffs "is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim").

## BACKGROUND FACTS

Plaintiff claims that he is disabled and suffers from difficulty walking, and that his medical needs include a "CPAP Machine, Eye Glasses, Medical Orthotics Sneakers, and Wheel chair as needed." (Complaint at 8, ECF No. 1-1.) Plaintiff states that he requested a wheelchair for the move to the Medium Unit, but that Sergeant Averill said that because Plaintiff could walk to the office approximately 50 feet away, he could walk to the Medium Unit approximately 1500 feet away. (*Id*.) Plaintiff alleges that Officer Touchette and Officer Soper took Plaintiff from his cell and dragged him by his upper arms to the Medium Unit at the Maine State Prison where Plaintiff was being transferred due to mental health symptoms Plaintiff was exhibiting. (*Id*.) Plaintiff also alleges that Sergeant Mallard yelled at him to get his paperwork that was in his cell. (*Id*. at 12.) Officers Touchette and Soper

3

then allegedly severely squeezed Plaintiff's upper arms as they forcibly dragged him to the Medium Unit, which caused pain and bruising in Plaintiff's upper arms, lacerations to his lower right leg, and pain in his back and hip where he had had prior surgery. (*Id.*) Plaintiff alleges that as he was being dragged, Sergeant Averill shouted at him to "stop resisting." (*Id.*)

Plaintiff also claims that he was referred for Emergency Observation Status in the Super Max Unit and was then moved from the Medium Unit. (*Id.* at 9.) Following his move, Plaintiff alleges some of his property, including a television, was damaged in the move. (*Id.*) In addition, Plaintiff asserts that prison personnel painted the unit to which Plaintiff was assigned and that the painting caused toxic fumes to pervade the unit, which had inadequate ventilation. (*Id.* at 10-11.) Plaintiff contends that various of his grievances regarding these incidents were denied. (*Id.* at 10, 11.)

### DISCUSSION

**A. Section 1983 Claims Against the Maine Department of Corrections and the Maine State Prison**

The Court's jurisdiction over Plaintiff's claims is based on 42 U.S.C. § 1983, which provides a civil action to any person deprived of a federal right by a state actor. Pursuant to § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

4

To maintain a § 1983 action against individuals who exercise state authority, Plaintiff must assert a claim that describes a deprivation of a federal right. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Plaintiff contends the defendants violated his rights under the Eighth Amendment Cruel and Unusual Punishments Clause, the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act. To the extent Plaintiff asserts a § 1983 claim against an individual defendant, Plaintiff's allegations must support a finding that the individual, through his or her individual actions, violated Plaintiff's constitutional rights. *Ashcroft v. Iqbal,* 556 U.S. 662, 676–77 (2009). In other words, each defendant is entitled to an individualized assessment as to whether Plaintiff has asserted an actionable claim against that defendant.

Subject to limited exceptions not applicable in this case, the State of Maine has immunity under the Eleventh Amendment against suits brought by citizens in federal court, regardless of the form of relief requested. *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 n.6 (1st Cir. 2009). To the extent Plaintiff attempts to assert a constitutional claim against the Department of Corrections, he is requesting relief against the State of Maine that is barred in federal court pursuant to the Eleventh Amendment.[2] Additionally, while a federal district court would have jurisdiction under the Civil Rights Act over claims against persons exercising state authority, § 1983 does not authorize claims against the state or its agencies. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 64 (1989); *see also Nieves–*

---

[2] Plaintiff named the Maine State Prison as a party to this action, as well as the Department of Corrections. While the prison facility is not a proper defendant, *see Collins v. Kennebec County Jail*, 2012 WL 4326191, at *3 (D. Me. May 31, 2012) ("The Kennebec County Jail is not a governmental entity or a proper party defendant to this lawsuit. It is a building."), the Court can reasonably construe the complaint to assert claims against the State of Maine.

*Marquez v. Puerto Rico,* 353 F.3d 108, 124 (1st Cir.2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."). Accordingly, Plaintiff cannot proceed on his claims under the Eighth and Fourteenth Amendments against the Maine Department of Corrections and the Maine State Prison.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). With this standard in mind, each of Plaintiff's claims is discussed below.

### B. Claims Against Individual Defendants

#### 1. Transport to the Medium Unit

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Kosilek v. Spencer,* 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825,

832 (1970). Cruel and unusual punishment consists of the denial of "the minimal civilized measure of life's necessities" assessed based on "the contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Plaintiff asserts that Officers Touchette and Soper dragged him to the Medium Unit during which process he experienced pain in his arms, back, hip, and leg. "Generally speaking, after incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The critical question … is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline." *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005) (quotation marks and citation omitted).

Plaintiff has alleged that Officers Touchette and Soper, under the supervision of Sergeant Averill,[3] refused to provide Plaintiff a wheelchair, to which Plaintiff allegedly was entitled due to his disability. The allegation that the officers "dragged" Plaintiff to the Medium Unit and caused personal injury in the process is sufficient to support a finding that the alleged contact consisted of the "unnecessary and wanton infliction of pain."

---

[3] "[F]or section 1983 liability to attach, a supervisor [need not] directly engage in a subordinate's unconstitutional behavior." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). "Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (quoting *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 768 (1st Cir. 2010)). Plaintiff has alleged that Sergeant Averill stated that Plaintiff was able to walk and ordered him to stop resisting while Plaintiff was dragged to the Medium Unit, suggesting at least condonation of Officers Touchette and Soper's actions, which is sufficient to state a claim for supervisory liability here.

*Skinner*, 430 F.3d at 488. Plaintiff, therefore, has asserted a claim on which he could potentially recover against Defendants Touchette, Soper and Averill.

### 2. Verbal Abuse

Plaintiff claims he was subjected to verbal abuse by Sergeants Averill and Mallard. "The First Circuit has established that '[f]ear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.'" *Badger v. Correct Care Sols.*, No. 1:15-CV-00517-JAW, 2016 WL 1430013, at *4, 2016 U.S. Dist. LEXIS 48130, at *6 (D. Me. Apr. 11, 2016) (quoting *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991), *abrogated on other grounds*, *Martinez v. Cui*, 608 F.3d 54 (1st Cir. 2010)). *See also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."). Plaintiff's alleged threatening or offensive comments do not support a federal claim.

### 3. Paint Fumes

Plaintiff alleges that, because of insufficient ventilation, toxic fumes pervaded his unit while it was being painted. Under certain circumstances, inadequate ventilation can conceivably contribute to conditions of confinement capable of violating the Eighth Amendment. *See*, *e.g.*, *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (describing black fiberglass dust that caused nosebleeds). However, because Plaintiff has not alleged serious acute health effects or symptoms and instead primarily bases his claim on general fears of certain chemical ingredients in paint and a suggestion of a reduced lifespan, Plaintiff's assertion of inadequate ventilation in this case is insufficient to support a

constitutional claim. *See, e.g., Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997) (poor ventilation of cells during summer not severe enough to state constitutional claim). "Remodeling and upkeep of institutions and buildings, in and out of prison, is a fact of life that must be faced by most individuals." *Givens v. Jones*, 900 F.2d 1229, 1234 (8th Cir. 1990); *see also Jordan v. Cole*, No. Civ. 04-2218, 2006 WL 376239, at *4 (W.D. Ark. Jan. 4, 2006) (same, citing *Givens*).

### C. Claim Regarding Damage to Personal Property

Although Plaintiff does not cite a specific basis for his claim, the only federal claim that Plaintiff's property damage allegations could conceivably support is a Fourteenth Amendment due process claim. "To establish a procedural due process claim under § 1983, a plaintiff must [demonstrate] that [he] was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008). Ordinarily, a due process violation is complete when a deprivation is imposed through an established state procedure that does not comply with constitutional procedural standards. *Godin v. Machiasport Sch. Dep't Bd. of Directors*, 831 F. Supp. 2d 380, 389–90 (D. Me. 2011); *see also Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").

Where, as with Plaintiff's television damage here, a prisoner alleges that an individual deprived him of property either through negligence or through intentional misconduct (sometimes referred to as a "random, unauthorized act"), the Due Process

9

Clause is only violated if the state does not afford meaningful post-deprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure ... it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (internal quotations omitted); *see also Parrat v. Taylor*, 451 U.S. 527, 543 (1981) (affirming dismissal of due process claim where "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure" related to the receipt of prisoner packages by mail); *Watson v. Caton*, 984 F.2d 537, 541 (1st Cir. 1993) (affirming dismissal of due process claim based on defendant's alleged destruction of "non-allowable" property that arrived at prison by mail, without providing prisoner notice and an opportunity to mail the property elsewhere).

The Maine Law Court has recognized that a prisoner can appeal to the state courts from an administrative ruling made by the Department of Corrections on the prisoner's grievance. *Fleming v. Comm'r Dep't of Corr.*, 2002 ME 74, ¶ 9, 795 A.2d 692, 695 (Maine Rule of Civil Procedure 80C(i) allows not only a review of final agency action, but also an independent claim for damages where appropriate). In addition, under the Maine Tort Claims Act, governmental entities are liable for property losses arising from the operation or maintenance of any public building. 14 M.R.S. § 8104-A(2). Maine law thus affords an individual an adequate remedy for the negligent or intentional destruction of personal property in the form of a common law conversion claim. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. Because the circumstances do not involve the deprivation of property as the result of an established state procedure, such as a disciplinary proceeding,

and because meaningful state remedies are available for the conversion of personal property, Plaintiff has failed to state an actionable due process claim.[4]

**D. Grievance Claims**

To the extent Plaintiff attempts to assert a claim based on the adequacy of the grievance process, Plaintiff's claim fails. Although prisoners must exhaust any available prison grievance procedures before they can file suit for a violation of other rights, *see* 42 U.S.C. § 1997e(a), the grievance process itself is not a source of federal rights. A prisoner does not have a right to a particular prison grievance procedure, or even to file a prison grievance; rather, the Due Process Clause entitles prisoners to predeprivation process whenever the state subjects them to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) ("[T]he prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); *Charriez v. Sec'y, Fla.*

---

[4] Even if Plaintiff's complaint could be read as containing a corresponding state law claim, Plaintiff has not shown it would be within the Court's subject matter jurisdiction on its own, *see generally*, 28 U.S.C. § 1332(a)(1) (providing for jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of different States"); *Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010) ("In cases involving prisoners, the courts presume that the prisoner remains a citizen of the state where he was domiciled before his incarceration"); and because the property damage involves different issues and defendants than the remaining federal claims, the court need not exercise supplemental jurisdiction over such a state law claim. *See generally*, 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"); *Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (1st Cir. 2013) ("State and federal claims are part of the same case or controversy for the purposes of section 1367(a) if they derive from a common nucleus of operative fact or are such that they would ordinarily be expected to be tried in one judicial proceeding"); *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) ("No categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness").

*Dep't of Corr.*, 596 F. App'x 890, 895 (11th Cir. 2015) ("Because the prison grievance procedure does not create a protected liberty interest, Charriez does not have a federal constitutional right within that administrative-grievance procedure."); *Von Hallcy v. Clements*, 519 F. App'x 521, 523 (10th Cir. 2013) ("Von Hallcy cannot state a due process claim based on allegations of an ineffective grievance reporting system."); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless."); *Butler v. Bowen,* 58 F. App'x 712 (9th Cir. 2003) ("[A] prisoner has no constitutional right to prison grievance procedures."); *Young v. Gundy,* 30 F. App'x 568, 569 – 70 (6th Cir. 2002) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."). Because prison grievance procedures are not mandated by the Constitution or other federal law, Plaintiff has not and cannot assert an actionable federal claim based on Defendants' administration of the grievance process.

### E. Claims Under the ADA and Rehabilitation Act

The ADA and Rehabilitation Act "provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014).[5] Disability discrimination can consist of (a) the

---

[5] Title II prohibits such conduct by public entities. 42 U.S.C. § 12132. Title III prohibits discrimination in places of public accommodation. 42 U.S.C. § 12182(a). Section 504 of the Rehabilitation Act prohibits discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

12

imposition of adverse consequences on a prisoner based on the prisoner's disability, (b) a prison policy that is neutral in its terms, but impacts prisoners with a disability more significantly, or (c) the refusal by the prison administrators to grant the prisoner a reasonable accommodation so that the prisoner can have meaningful access to a prison program or service. *Id.* at 145.

To state a claim, a plaintiff must provide a short and plain statement that identifies the disability and the relationship between the disability and the policy or practice on which the discrimination claim is based. *See*, *e.g.*, *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006) ("To state a claim for a violation of Title II [of the ADA], a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability.").

Although Plaintiff has not identified the specific mental and/or physical health condition at issue, at this stage of the proceedings, he has asserted sufficient facts to support a reasonable inference that he is a qualified individual with a disability and that he was denied the use of a wheelchair that was necessary due to his disability. Given the standard applicable to the Court's preliminary review of Plaintiff's complaint, Plaintiff can proceed because he has alleged enough facts that an inference can be drawn that the denial of the wheelchair generated a claim under the ADA and the Rehabilitation Act.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court dismiss Plaintiff's claims based on the grievance procedure, the alleged threats and verbal abuse, and the alleged damage to his personal property. Furthermore, I recommend the Court dismiss Plaintiff's claims against the Maine Department of Corrections and the Maine State Prison. If the Court adopts this recommendation, Plaintiff would proceed on his Eighth Amendment claim against Defendants Touchette, Soper and Averill, based on Plaintiff's transport to the Medium Unit, and on his claims against the State of Maine under the ADA and Rehabilitation Act.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of February, 2020.

14