UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RICKY SOUCY, SR., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   1:20-cv-00024-JDL |
| | ) |
| MAINE DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
|     Defendants | ) |

**RECOMMENDED DECISION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND
ORDER ON MOTIONS TO SEAL**

Plaintiff, an inmate incarcerated at the Maine State Prison (MSP), alleges Defendants[1] violated the Americans with Disabilities Act (ADA), the Rehabilitation Act, and his Eighth Amendment rights when he was transferred from the Close Unit to the Medium Unit of the MSP.

The matter is before the Court on Defendants' motion for summary judgment. (ECF No. 61.)  Defendants also moved to seal their statement of facts and exhibits and their reply statement of facts. (Motions, ECF Nos. 59, 69.)  After a review of Defendants' motions

---

[1] In his complaint, Plaintiff asserted claims against multiple defendants.  After review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A, the Court dismissed all Plaintiff's claims except his Eighth Amendment claims against Defendants Touchette, Soper and Averill, and his claims under the ADA and Rehabilitation Act against the State of Maine. (Recommended Decision and Order Adopting Recommended Decision, ECF Nos. 13 & 15; Supplemental Recommended Decision and Order Adopting Supplemental Recommendation, ECF Nos. 24, 29.)

and the record, I grant in part the motions to seal and I recommend the Court grant the motion for summary judgment.

## MOTIONS TO SEAL

In support of the motions to seal, Defendants cite 34-A M.R.S. § 1216, which provides that the Maine Department of Corrections (MDOC) cannot disclose administrative and medical information regarding an inmate, except under certain circumstances. The information can be disclosed pursuant to a court order. 34-A M.R.S. § 1216(C).

When a court considers a motion to seal, the court must be mindful that the law recognizes a presumption "of public access to judicial proceedings and records." *United States v. Kravetz*, 706 F.3d 47, 52 (1st Cir. 2013). As the First Circuit has acknowledged, however, "[t]hough the public's right to access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id*. at 59 (quoting *Siedle v. Putnam Inv., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). In its assessment of a request to seal, a court is required to "carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case." *Id*.

Plaintiff asserts claims based on his medical condition and his medical treatment. In his complaint, Plaintiff included relatively detailed information about his medical condition. Plaintiff thus has placed his medical condition in issue and has disclosed information that might otherwise be subject to the confidentiality requirement of § 1216. Plaintiff's privacy interest, therefore, is somewhat diminished by his disclosure of the

information. Furthermore, the information regarding Plaintiff's medical condition is relevant, if not essential to the Court's assessment of the summary judgment motion. By rule, the statements of material facts are the principal source of the summary judgment record. The public interest in access to the statements of fact to assess the merits of the Court's decision, therefore, is significant.

The balancing of the respective interests does not militate in favor of the seal of Defendants' statements of material fact. However, because the medical and other records included as exhibits to the statements contain information that is not material to Plaintiff's claims and the Court's decision, the seal of some of the attachments (ECF Nos. 59-1, 59-2, 59-3, 59-4) to Defendants' Statement of Material Facts shall be sealed. The Statement of Material Facts (ECF No. 59-5) and the Reply Statement of Material Facts (ECF No. 69-1) shall not be sealed.[2]

### SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and

---

[2] After the briefing on the motion for summary judgment was complete, Plaintiff filed what he styled, in part, as a "Motion not to Seal Defendants' Dockets and to Dismiss Statements Made by Dr. Ali." (ECF No. 72.) The Court docketed the filing as a sur-reply. Plaintiff does not directly address the issue of which documents he contends should be sealed or unsealed. He contends, however, that he did not give Raziuddin Ali, M.D., one of Defendants' declarants and Regional Medical Director for Wellpath, the company contracted with MDOC to provide healthcare services to inmates, permission to disclose, or testify regarding, his medical files. (*See* Declaration of Dr. Raziuddin Ali, ECF No. 60-10.) As noted above, through the allegations he asserted in this case, Plaintiff placed certain portions of his medical history at issue. To the extent Plaintiff moves to strike the Ali Declaration, therefore, the Court denies Plaintiff's request.

District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence. In addition, Local Rule 56 establishes how parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules. *Ruiz Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). If an additional statement is introduced by the non-moving party, the moving party must file a reply statement in which it admits, denies, or qualifies the non-moving party's additional statements by reference to each numbered paragraph, with citations to supporting evidence. D. Me. Loc. R. 56(d).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly

considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

Plaintiff filed a statement of fact, which lacked citation to the record and did not specifically respond to Defendants' statements of fact. (Plaintiff's Statement of Fact, ECF No. 66.) The Court will consider Defendants' uncontroverted statements of fact and Plaintiff's statements to which the Defendants admitted in their reply statement of material facts.³ (*See* ECF No. 69-1.)

In addition, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128-30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'" (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons*, 484 F. Supp. 2d at 182-83. The Court, therefore, will consider Plaintiff's deposition testimony.⁴ (Transcript (Tr.), ECF No. 60-14.)

---

³ While in some instances, a court might consider the assertions in a pro se verified complaint when assessing the merits of a summary judgment motion, *see, e.g.*, *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-83 (D. Me. 2007), in this case, neither Plaintiff's complaint nor the amendment of his complaint can be considered a verified pleading.

⁴ As referenced above, Plaintiff submitted additional documents after Defendants filed their reply. Plaintiff entitles the submission a "Motion not to Seal Defendants' Dockets and to Dismiss Statements Made by Dr. Ali and to Allow these Statements of Facts. Motion for [Summary] Judgment in My Behalf." (Sur-reply, ECF No. 72.) The Court docketed the submission as a sur-reply as it is primarily a sur-reply (*but see*

## SUMMARY JUDGMENT FACTS

From 2004 when he entered the MSP to 2017, Plaintiff was assigned to the second floor of the Close Unit in a single cell without a roommate. (Defendants' Statement of Material Fact (DSMF) ¶¶ 4, 8-10; Tr. 68:11-19.) Plaintiff was diagnosed with several serious health conditions and complained of chronic pain to MSP's health services contractor.[5] (DSMF ¶¶ 11-13, 26-27.) Although he had some difficulty walking,[6] he was neither wheelchair-bound nor assigned his own wheelchair. (DSMF ¶¶ 14-15, 26-28; Tr. 13:24-14:18.) MSP's healthcare providers did authorize Plaintiff's use of a wheelchair.[7] (DSMF ¶¶ 29-35, 87-90.)

---

footnote 2 above.) "Neither the Federal Rules nor the Local Rules permit[] a party to file a sur-reply to the moving party's reply[;] therefore, sur-replies are disfavored and granted only in rare circumstances." *Primary Prods. LLC v. Apple, Inc.*, 2:21-sv-00137-JDL, 2021 WL 3610507, at *1 n.1 (D. Me. Aug. 13, 2021) (citations and quotation marks omitted). Although Plaintiff states that his sur-reply is a declaration pursuant to 28 U.S.C. § 1746, he failed to provide the jurat required under § 1746(2) that his statements are true and correct under penalty of perjury. In any event, because Plaintiff's submission reiterates arguments made in his opposition which are addressed below, references a subsequent disciplinary matter that is not at issue, and attaches medical records regarding a current medical condition, the filing does not include any additional material record evidence.

[5] Healthcare providers at MSP issue annual Physical Activity Limitation (PAL) sheets to alert non-medical MDOC staff, including correctional officers, to any medical conditions an inmate has that require restrictions, to the nature of the restrictions (if any), to the inmate's special needs (if any), and to any appliances the inmate is permitted to use. (DSMF ¶ 29.) Non-medical MDOC staff do not have direct access to the PAL sheets; rather, the information regarding an inmate's medical restrictions is also contained in the inmate's "Current Alerts," to which MDOC staff have direct access. (DSMF ¶ 30.) Among the restrictions in Plaintiff's operative PAL sheet in August 2017 were no running, no prolonged standing greater than 10 minutes without a 15 minute rest, and no strenuous physical activity; his special needs consisted of a need to have a bottom bunk and a double or air mattress. (DSMF ¶ 32.)

[6] Plaintiff used handrails to walk around the second floor, as well as up and down the stairs to and from the first floor. (Tr. 13:24-14:18.)

[7] Plaintiff's PAL sheet, as well as the "Current Alerts," listed a wheelchair among Plaintiff's site appliances, but neither expressly stated any medical restriction on Plaintiff's ability to walk, nor specified any circumstances in which the wheelchair should be used. (DSMF ¶¶ 32-34.) Plaintiff considered the wheelchair as an appliance he could use "whenever [he] needed it …." (Tr. 19:20-21:2.)

Inmates who are wheelchair-bound or regularly rely on a wheelchair are not typically assigned to live on an upper floor. (DSMF ¶ 14.) Plaintiff declined to have a wheelchair allocated to him, but he did use one from time to time. (DSMF ¶ 15; Tr. 16:2-13, 23:24-24:14.) He could walk from his cell down the stairs to the ground floor and back as often as twice daily for meals, to get his mail, to go to the recreation yard, or occasionally to go to the medical clinic accompanied by guards. (DSMF ¶¶ 16-17; Tr. 13:23-16:23; 23:9-24:6.) Plaintiff would also push the meal cart from the hallway into the pod on the first floor. (DSMF ¶¶ 20-22; Tr. 17:25-23:4.)

On or before August 31, 2017, MDOC officials reclassified Plaintiff from Close custody to Medium custody and ordered MSP personnel to move Plaintiff from the Close Unit to the Medium Unit. (DSMF ¶ 37.) Defendants Averill, Touchette and Soper were correctional guards working in the Close Unit on August 31, 2017; none of them was involved in the decision to move Plaintiff. (DSMF ¶¶ 38, 44.) An officer told Plaintiff he was being moved from Close to Medium and to pack his belongings. (DSMF ¶ 39; Tr. 36:20-25.) Plaintiff did not pack because he did not want to move and, for mental health reasons, he believed that it would be unsafe for him to have a roommate. (DSMF ¶ 40; Tr. 37:1-38:18.) He asked to speak with the officers in the sergeant's office, and then walked down to the first floor to do so. (DSMF ¶¶ 42-43; Tr. 39:5-40:1, 55:11-19.)

Plaintiff told Defendants Averill, Touchette and Soper and another officer that a mental health provider informed him that he could hurt someone if he was in a cell with another person and that there was an agreement that he would remain in a single cell. (DSMF ¶¶ 44, 46; Tr. 38:19-39:4, 41:17-42:7.) Plaintiff became loud during this

7

conversation and demanded to be taken to segregation. (DSMF ¶¶ 47-48; Tr. 40:19-4.) The officers put Plaintiff on Emergency Observation Status and Defendants Touchette and Soper placed him in hand restraints behind his back, as they had been instructed to do. (DSMF ¶¶ 49-50; Tr. 41:11-13.) According to Plaintiff, he requested a wheelchair, but the request was denied. (Tr. 41:5-11.) Defendants Averill, Touchette and Soper stated they had seen Plaintiff walking around the unit, but none remembers ever seeing him use a wheelchair.[8] (DSMF ¶ 36.)

Defendants Touchette and Soper walked on either side of Plaintiff from the Close Unit to the Medium Unit, with each holding him by one of his upper arms and supporting his weight occasionally when his legs gave out.[9] (DSMF ¶¶ 51, 54; Tr. 46:14-47:7.) At the time, Plaintiff weighed approximately 300 pounds. (DSMF ¶ 55; Tr. 52:2-4.) Plaintiff states that during the walk, he fell on stairs in the Medium Unit, cutting his leg. (DSMF ¶ 58; Tr. 48:20-49:2, 59:14-60:5, 69:11-70:20.) After Plaintiff stumbled on the stairs, Defendants Touchette and Soper helped him up and they continued walking. (DSMF ¶ 58.) Defendant Averill accompanied Plaintiff and Defendants Touchette and Soper, but he did not touch Plaintiff. (DSMF ¶ 52; Tr. 46:14-47.)

Plaintiff asked to see a mental health provider; and after he arrived in the Medium Unit, a mental health provider was contacted. (DSMF ¶¶ 60, 63-65.) After Defendants

---

[8] Plaintiff was told that someone contacted the medical department and that medical department personnel said that Plaintiff did not need a wheelchair to go to the Medium Unit. (Tr. 56:9-20.)

[9] Plaintiff describes his move to the Medium Unit as being "dragged;" he was on his feet with the officers holding him up during the escort to the Medium Unit. (DSMF ¶ 54; Tr. 47:8-53:23.)

8

Averill, Touchette and Soper left Plaintiff in the Medium Unit, a mental health provider spoke with Plaintiff and observed him injuring himself. (DSMF ¶¶ 60-70, 75-76.) The nurse who treated the injury to his wrist noted that there were three spots of blood on Plaintiff's pant leg. (DSMF ¶¶ 71-72.) Plaintiff asserts the cut on his leg bled, but he did not inform the nurse of his leg injury or any other injuries and he refused to go to the medical department to be evaluated. (DSMF ¶¶ 72-74; Tr. 61:11-18; 65:23-71:2.) The medical records do not reflect any reports by Plaintiff of injuries sustained as a result of the move to the Medium Unit.[10] (DSMF ¶¶ 78-80, 97-106.) Plaintiff rubbed his wrist causing an injury because he was upset and nervous and asked again to go to segregation, to which he was transported from the Medium Unit. (Tr. 61:5-21.)

Plaintiff was returned to the Close Unit on September 1, 2017. (DSMF ¶¶ 75-77.) Plaintiff resided on the second floor of the Close Unit, declining to have a wheelchair assigned to him, until he was transferred to another facility in 2018. (DSMF ¶¶ 18, 105-06, 108-09; Tr. 78:24-80:4.) Plaintiff believes that his medical conditions were exacerbated by being forced to walk to the Medium Unit. (Tr. 74:-11-76:16.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with

---

[10] Plaintiff asserts that his biceps were bruised during the move. (Tr. 74:6-10.)

9

respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the Plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* at 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## DISCUSSION

### I. Plaintiff's Eighth Amendment Claims

Plaintiff claims that Defendants Averill, Touchette and Soper violated his Eighth Amendment rights by refusing to provide him with a wheelchair for his transport from the Close Unit to the Medium Unit and by injuring him during the transport.

A claim of constitutional harm caused by state actors, as Plaintiff has alleged, is actionable under the Civil Rights Act, 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

>Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ….

42 U.S.C. § 1983. "Section 1983 provides a cause of action when an individual, acting under color of state law, deprives a person of constitutional rights." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016); *see* 42 U.S.C. §1983. To maintain a claim under section 1983, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (alteration in original) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)).

Plaintiff's contention that Defendants Averill, Touchette and Soper violated his Eighth Amendment rights appears to be based on claims of deliberate indifference to his

serious medical needs and the use of excessive force. *See McNeeley v. Wilson*, 649 F. App'x 717, 721 (11th Cir. 2016) (Eighth Amendment claims may be premised on charges of deliberate indifference, conditions of confinement, and/or excessive use of force). As discussed below, the record does not support his claims.

### A.     Deliberate Indifference to Medical Needs

Defendants' obligation regarding Plaintiff's medical care is governed by the Due Process Clause of the Fourteenth Amendment. The Due Process Clause imposes on states the "substantive obligation" not to treat prisoners in their care in a manner that reflects "deliberate indifference" toward "a substantial risk of serious harm to health," *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011), or "serious medical needs," *Feeney v. Corr. Med. Servs.*, 464 F.3d 158, 161 (1st Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976)). To be actionable, a deliberate indifference claim must satisfy both an objective and a subjective standard. *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011).

The objective standard evaluates the seriousness of the risk of harm to one's health. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is serious if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)).

The subjective standard concerns the culpability of the defendant. There must be evidence that a defendant possessed a culpable state of mind amounting to "deliberate indifference to an inmate's health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted). Deliberate indifference is akin to criminal recklessness, "requiring actual knowledge of impending harm, easily preventable." *Feeney*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). The focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 8 (1st Cir. 2002).[11]

To prove facts that satisfy the objective standard, therefore, unless the need for a specific treatment or the use of an assistive device is obvious even to a lay person, a plaintiff must establish that a physician has made a diagnosis mandating that treatment. *Leavitt*, 645 F.3d at 497. Additionally, a plaintiff must prove that the defendants in question demonstrated deliberate indifference to the plaintiff's serious medical need by disregarding

---

[11] Deliberate indifference must be distinguished from negligence. As the First Circuit explained:

> A finding of deliberate indifference requires more than a showing of negligence. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sires v. Berman*, 834 F.2d 9, 13 (1st Cir. 1987). A plaintiff claiming an eighth amendment violation with respect to an inmate's serious mental health or safety needs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference." *Estelle*, 429 U.S. at 106; *see also Cortes-Quinone v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988). Although this court has hesitated to find deliberate indifference to a serious need "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment," *Sires*, 834 F.2d at 13, deliberate indifference may be found where the attention received is "so clearly inadequate as to amount to a refusal to provide essential care."

*Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991).

"impending harm, easily preventable," *Feeney*, 464 F.3d at 162, or "a refusal to provide essential care," *Torraco*, 923 F.2d at 234.

Here, the facts in the summary judgment record do not support a finding of an Eighth Amendment violation based on deliberate indifference to a serious medical need. A review of the record reveals no evidence that a physician diagnosed Plaintiff with a condition mandating the use of a wheelchair, or that Plaintiff's need for a wheelchair was obvious to a lay person. The evidence establishes that Plaintiff often walked around both floors of the Close Unit, went up and down stairs, pushed the meal cart, and occasionally walked to the medical department and recreation yard. Defendants Averill, Touchette and Soper observed him walking in the Close Unit. The evidence also establishes that Plaintiff declined to have a wheelchair assigned specifically to him. In sum, the record does not support an inference that Plaintiff's need for a wheelchair to move from the Close Unit to the Medium Unit was obvious to a lay person.

Even if the need was obvious, Plaintiff's claim fails because Plaintiff has not satisfied the subjective prong of the deliberate indifference standard. Plaintiff admits that he could walk at least some distance with support and Defendants regularly saw him walking within the Close Unit. Defendants Averill, Touchette and Soucy were unaware of any medical restriction on Plaintiff's ability to walk, and they confirmed that Plaintiff did not require a wheelchair for the move. Defendants Touchette and Soucy physically supported Plaintiff during the escort to the Medium Unit. Upon Plaintiff's arrival at the Medium Unit, as Plaintiff requested, contact was made with a mental health provider. There is no evidence in the record "of actual medical risk to the plaintiff[] as to make it

14

unreasonable to conclude that the [Defendants] knowingly disregarded such a risk," *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 143 (1st Cir. 2014.),

### B. Excessive Force

Plaintiff's excessive force claim is also governed by the Eighth Amendment. A claim of excessive force in violation of the Eighth Amendment "has two components – one subjective, focusing on the defendant's motive for his conduct, and other objective, focusing on the conduct's effect.'" *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019) (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)).

The subjective component focuses on determining "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Factors relevant to that determination include "'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials,' 'the need for the application of force,' 'the relationship between the need and the amount of force that was used,' 'the extent of the injury inflicted,' and 'any efforts made to temper the severity of a forceful response.'" *Staples*, 923 F.3d at 13 (quoting *Whitley*, 475 U.S. at 321).

Plaintiff's unsupported contentions about the pain and injuries he allegedly suffered and his assertion that the walk exacerbated existing medical conditions, without more, do not support a finding of a constitutional violation. The record thus does not establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Staples*, 923 F.3d at 13 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Regardless of whether the record could satisfy the objective prong, Plaintiff has not satisfied the subjective prong of deliberate indifference. The mere fact that Plaintiff suffered minor injuries in or experienced pain following the incident alone cannot support a finding that the force used included the necessary wantonness. To constitute

> cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety….. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause…. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley*, 475 U.S. at 319 (citations omitted). In this case, Plaintiff refused to pack his belongings, argued with the officers regarding the move to the Medium Unit, raised his voice, and advised that a provider told him that he might hurt someone if he had to live in a cell with another inmate. Under the circumstances, no reasonable factfinder would conclude that Defendants' decision to put Plaintiff in hand restraints to escort him to the Medium Unit was unreasonable as part of Defendants' responsibility to maintain security and order. [12] *Staples*, 923 F.3d at 10-14.

---

[12] Defendant Averill also argues that any claim against him would be based on supervisory liability under § 1983 because Plaintiff does not assert that he either dragged Plaintiff or directly caused any of Plaintiff's alleged injuries. Any claim for supervisory liability against Defendant Averill fails because, for the reasons stated above, Plaintiff cannot establish that Defendants Touchette or Soper violated his constitutional rights. *See Hegarty v. Somerset Cty*, 53 F.3d 1367, 1379-80 (1st Cir. 1995) (to establish supervisory liability, there must be "proof that the supervisor's conduct led inexorably to [a] constitutional violation.").

Defendants Averill, Touchette and Soper also argue that they are entitled to qualified immunity. Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir.

## II.      Plaintiff's Claims Under the ADA and Rehabilitation Act

Plaintiff alleges Defendant State of Maine violated his rights under the ADA and the Rehabilitation Act.

The ADA and Rehabilitation Act "provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Nunes*, 766 F.3d at 144.[13] Disability discrimination can consist of (a) the imposition of adverse consequences on a prisoner based on the prisoner's disability, (b) a prison policy that is neutral in its terms, but impacts prisoners with a disability more significantly, or (c) the refusal by the prison administrators to grant the prisoner a reasonable accommodation so that the prisoner can have meaningful access to a prison program or service. *Id.* at 145.

To prevail on a claim of disability discrimination, Plaintiff must show that he (1) is a qualified individual with a disability, (2) who was either excluded from participation in or denied the benefits of the State's services, programs, or activities or was otherwise discriminated against, (2) and that such exclusion, denial of benefits or discrimination was by reason of his disability. *Id.* at 144.

---

2014).  Because I have determined that the facts do not support a finding of a constitutional violation, I do not address the qualified immunity argument.

[13] Title II prohibits such conduct by public entities.  42 U.S.C. § 12132.  Title III prohibits discrimination in places of public accommodation.  42 U.S.C. § 12182(a).  Section 504 of the Rehabilitation Act prohibits discrimination under any program or activity receiving federal financial assistance.  29 U.S.C. § 794(a).

Plaintiff's allegation that he was refused the use of a wheelchair to move from one unit in the prison to another could be construed as a claim that he was denied a reasonable accommodation. *Id*. at 145. The record, however, lacks the necessary medical evidence that Plaintiff required a wheelchair to travel the distance from the Close Unit to the Medium Unit. To the contrary, the uncontroverted evidence establishes that Plaintiff walked around the Close Unit without a cane or walker, climbed up and down the stairs, pushed the chow cart through the hallway, and occasionally walked to and from the medical department and rec yard. The record also lacks evidence that would establish the assistance provided by the officers would not constitute a reasonable accommodation if Plaintiff had difficulty walking to the Medium Unit. That is, on this record, no reasonable factfinder could find that the assistance Plaintiff received from Defendants Touchette and Soper during the walk to the Medium Unit, accompanied by Defendant Averill, did not constitute a reasonable accommodation. *Id*. at 146. Defendant State of Maine, therefore, is entitled to summary judgment on Plaintiff's ADA and Rehabilitation Act claims.

## CONCLUSION

I grant in part Defendants' motions to seal. Certain attachments (ECF Nos. 59-1, 59-2, 59-3, 59-4) of Defendants' Statement of Material Facts shall be sealed. The Statement of Material Facts (ECF No. 59-5) and the Reply Statement of Material Facts (ECF No. 69-1) shall not be sealed.

Based on the foregoing analysis, I also recommend the Court grant Defendants' motion for summary judgment and enter judgment in favor of Defendants on all claims.

## **NOTICE**

Any objections to the order on the motions to seal shall be filed in accordance with Federal Rule of Civil Procedure 72.

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 21st day of September, 2021.